## GLYNN v. KRIPPNER et al.

District Court, D. Minnesota, Third Division.

Feb. 20, 1931.

Thomas H. Quinn, of Faribault, Minn., for plaintiff.

Cobb, Hoke, Benson, Krause & Faegre, of Minneapolis, Minn., for defendants.

SANBORN, District Judge.

This action was one for personal injuries and property damage growing out of an automobile collision. The plaintiff asserted the negligence of the defendants, and the defendants asserted that the plaintiff was negligent, and counterclaimed for their damages. The jury brought in a verdict in favor of the plaintiff for $1,600, which the defendants now move to have set aside.

On March 19, 1930, the plaintiff was driving a truck in a northerly direction on state-aid road No. 23, which intersects state-aid road No. 30, which runs east and west. The defendant Krippner was driving in a westerly direction on state-aid road No. 30, and at the intersection of the two highways the cars came into collision. This was about 3:30 o'clock in the afternoon. The plaintiff testified that he first looked to the right when he was 100 yards south of the intersection and that at that time he saw no car; that he next looked when he was some 20 feet south of the intersection, and that he then saw the defendants' car about 100 or 125 feet to his right, approaching the intersection; that as he (the plaintiff) was about to enter the south line of road No. 30 at the intersection, he looked again and saw the defendants' car about 60 feet back from the intersection; that he (the plaintiff) could have stopped his car in 12 or 15 feet; that the defendants' car was coming at least 50 miles an hour and did not slacken speed; that the intersection was in the open country and there were no other cars in sight at the time of the collision; that there was nothing which would seriously obstruct the view of either of the drivers. The plaintiff stated that he realized the speed of the defendants' car at the time he saw the car and before he himself had entered the intersection, but that he thought that he could get across the road in time. He said that he was not relying upon the defendants' car slowing down.

At the close of the plaintiff's case, there was a motion for a dismissal by the defendants on the ground that the plaintiff's contributory negligence appeared as a matter of law from his own testimony. At the close of all the evidence, the defendants moved for a directed verdict. These motions were denied, and exceptions allowed.

The question for consideration is this: Was the plaintiff guilty of contributory negligence as a matter of law, upon his own testimony?

If the plaintiff's testimony is to be believed, he knew, at the time he entered the intersection, that the defendants' car was approaching from his right at a speed of about 50 miles an hour and that it was about 60 feet away. His own car was under control. He thought that he could cross the intersection before the defendants' car struck him. It would appear, then, that he did the one thing which was certain to result in disaster, when he had before him a perfectly safe course which would have avoided any possible injury to himself. Apparently, with full knowledge of the facts, he placed himself in a position of known danger.

The facts in this case are not unlike those in Lindahl v. Morse, 148 Minn. 167, 181 N. W. 323. In that case, the court said (page 168 of 148 Minn., 181 N. W. 323):

"Both cars reached the intersection practically at the same time, the plaintiff's a little ahead. Plaintiff saw defendant's car

when it was about 40 feet from the intersection. He made no effort to slacken his speed. He thought he could clear the crossing ahead of defendant's car. The collision occurred near the center of the intersection. The right front wheel of plaintiff's car struck the left side running board of defendant's car, which was approaching from the right, and, under chapter 119, § 22, p. 164, Laws of 1917 (Gen. St. Supp. 1917, § 2552), had the right of way. Under the provisions of that statute the plaintiff was guilty of contributory negligence as a matter of law, if his testimony can be relied upon."

To the same effect is Anderson v. Jenney Motor Co. et al., 150 Minn. 358, 185 N. W. 378. Sorenson v. Sanderson, 176 Minn. 299, 223 N. W. 145, is another case similar to this case, except for the fact that the plaintiff testified that he did not see the defendant's car approaching on his right on the same street as he was making a left turn at a street intersection. The court said (page 301 of 176 Minn., 223 N. W. 145, 146):

"The topography was such that defendant's car, approaching from the north, was visible for more than a city block—perhaps much more. The conclusive presumption, under such circumstances, is that plaintiff failed to look or else heedlessly disregarded the knowledge so obtained, and negligently encountered obvious danger from the fast-approaching automobile."

Again:

"This is not a case where plaintiff saw the approaching car and advanced because he had the right of way, and was injured while acting under the assumption that the driver of the belated car to his right would approach the intersection at a reasonable and proper speed under the circumstances, and in recognition of plaintiff's superior rights incidental to his having first entered the intersection. Under such a situation, the claim of contributory negligence would be for the jury."

DeHaan v. Wolff, 178 Minn. 426, 227 N. W. 350, is to much the same effect. There, the court said:

"He [the plaintiff] insists that he was driving not to exceed 15 miles an hour, and that he looked to his right 'just before the sidewalk line on Palace' was reached. He denies that he saw defendant's car then or at any other time before the collision. He continued to the right of the center line of Finn, and his automobile was hit, so he says, just after it crossed the center line of Palace. It is not open to reasonable doubt that the collision occurred somewhat farther south than

plaintiff admits. Defendant, unlike plaintiff, discovered the danger before the collision and turned abruptly to the right in an effort to avoid it. That seems pretty thoroughly established. But, taking plaintiff at his word, the fact remains that he came onto the intersection without doing anything to avoid collision with a car approaching from his right and so close that the two could not proceed with speed unchecked without coming together. There were no distracting circumstances. The northwest corner of the intersection, on plaintiff's right as he approached, was not a blind corner. He could see to his right on Palace street, where defendant was approaching, when he got within 20 feet of the northerly sidewalk line of the street. Plaintiff did not change his course or check his speed by applying his brakes or otherwise. It is clear that, if he had exercised any reasonable precaution to avoid it, there would have been no collision. So plaintiff must be held guilty of contributory negligence as matter of law."

The plaintiff claims that the last two cases can be distinguished from this case on the ground that the plaintiffs failed to look. There can be no logical distinction between failing to look and failing to heed.

The plaintiff relies on the case of Primock v. Goldenberg, 161 Minn. 160, 200 N. W. 920, 921, 37 A. L. R. 484. There the plaintiff testified:

"Q. He (defendant) was traveling at a rate that, if both proceeded into the intersection, there would be a collision? A. Yes, sir.

"The Court: Did he slacken up any? A. No; he kept going.

"Q. You then proceeded to cross the intersection, didn't you? A. Yes."

The Supreme Court of Minnesota says of this testimony:

"In his quoted admission, plaintiff seems to have been frank. He admits the obvious truth, demonstrated by the immediate result, that both could not maintain their speeds and proceed without collision. He did not admit, nor can he be construed as having admitted, that he should have perceived at the instant that collision was imminent."

In that case it appears that the intersection where the collision occurred was a blind one. The plaintiff reached it while the defendant was still 125 feet away and going at a speed estimated at 35 miles an hour. The distinction between that case and this is obvious. In this case the intersection was not a

blind one; **Mr. Glynn** had all the facts before him; he observed a car coming from his right at 50 miles an hour and some 60 feet away at the time he entered the intersection and attempted to cross it. He did not rely upon the car slowing down.

The laws of Minnesota provide that when two vehicles enter an intersection at approximately the same time, the driver of the vehicle on the left shall yield the right of way to the vehicle on the right; but that the driver of any vehicle traveling at an unlawful speed shall forfeit any right of way which he might otherwise have. Section 18(a), Uniform Highway Traffic Act, Minn. Laws 1927, chap. 412.

Just what the effect of the provision that the driver of a vehicle which travels at an unlawful speed shall forfeit the right of way which he might otherwise have, is, is still unsettled; at least, I do not find that the Supreme Court of Minnesota has ruled on it. It is referred to, however, in DeHaan v. Wolff, supra, as follows (page 429 of 178 Minn., 227 N. W. 350, 351):

"There is no occasion for determining the meaning or effect of the provision of Laws 1927, p. 563, c. 412, § 18(a), that 'the driver of any vehicle * * * traveling at an unlawful speed shall forfeit any right of way which he might otherwise have hereunder.' Assuming that defendant was approaching at an unlawful speed and so had forfeited his right of way, plaintiff did not know it, because he did not see defendant until the moment of impact. Plaintiff could not be relieved from the duty of care by any want of it on defendant's part of which he (plaintiff) was ignorant."

It is possible that in this case the jury might have found that the defendants' car was going too fast, since there is a rebuttable presumption that a speed exceeding 45 miles an hour is a dangerous rate of speed; although, on a straight, graveled road through an open countryside, with only one car in sight approaching from the left, that rate of speed would seem not unreasonable in this day and age. However that may be, the rate of speed at which the defendants' car was traveling could not serve to excuse a lack of care on the part of the plaintiff in placing himself in a position of known danger and failing to follow the course which any degree of prudence at all would have told him was the proper one to pursue. I think that the plaintiff was guilty of contributory negligence as a matter of law, and that the verdict of the jury cannot be sustained.

The question then is whether to grant a new trial or to direct the entry of judgment as requested by the defendants.

I am fully aware of the decisions of the Supreme Court of the United States to the effect that judgment notwithstanding the verdict cannot be granted by a federal court. It has always been the law in this state that a court might grant judgment non obstante. The decision in Slocum v. New York Life Ins. Co., 228 U. S. 364, 33 S. Ct. 523, 57 L. Ed. 879, which denied the right to grant such a judgment, was by a divided court; Justices Hughes, Holmes, Lurton, and Pitney, dissenting. The dissenting opinion in that case is clear and exhaustive. In the trial of an action at law, the court, at the close of the testimony, upon motion of one of the parties, may direct the jury to bring in a verdict for him if the law requires that course. The jury has absolutely nothing to say about it. It is equivalent to ordering judgment. What possible justification is there for denying the court the right, after trial and verdict, to grant the judgment which should have been granted during the trial? The parties are the same; the record is the same; the only thing that is lacking is the presence of the jury, which performs no function whatever, so far as questions of law are concerned, at any time either during or after trial. It seems to me very probable that the Supreme Court of the United States as now constituted is unlikely to hold again that the Constitution prohibits the granting of judgment notwithstanding the verdict.

To grant a new trial in this case will do no one any good. The question of the negligence of the defendants was properly submitted to the jury and was determined adversely to them. That question ought not to be relitigated, and they do not ask that it be relitigated. If my conclusion that the plaintiff was guilty of contributory negligence as a matter of law is correct, the defendants were entitled to a judgment against the plaintiff, and they are just as much entitled to it now as they were when the jury was present. If I am wrong, a reversal will reinstate the judgment for plaintiff, and that will end the case. The defendants have signified their willingness to accept judgment notwithstanding the verdict, in the face of the decisions of the Supreme Court. I hope that the Court of Appeals may see fit to certify the question of the right of a federal court to grant such judgment where the laws of the state permit that practice, to the Supreme Court of the United States for reconsideration.

It is ordered that the verdict in this case and the judgment entered thereon be set aside, and that the motion of the defendants for judgment be granted, and that judgment be entered in their favor.